JOSEPH W. COTCHETT (#36324)
jcotchett@cpmlegal.com
NIALL P. McCARTHY (#160175)
nmccarthy@cpmlegal.com
NANCY L. FINEMAN (#124840)
nfineman@cpmlegal.com
JUSTIN T. BERGER (#250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone (650) 697-6000
Facsimile (650) 697-0577

*Co-Lead Counsel for Plaintiffs*

JEFFREY G. SMITH (#133113)
smith@whafh.com
ROBERT ABRAMS
abrams@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

*Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re: WACHOVIA WAGE AND HOUR LITIGATION** _____ **This document relates to:** **ALL ACTIONS** _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

MDL No. 07-1807 DOC

**APPLICATION FOR ATTORNEYS FEES, EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:      October 5, 2009
Time:      3:00 p.m.
Ctrm:      9D
Hon.       David O. Carter

# TABLE OF CONTENTS

APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND AND LITIGATION HISTORY . . . . . . 2

    A.   Litigation Milestones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.   MDL Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.   The Parties' Exchange of Information . . . . . . . . . . . . . . . . . . 2

        3.   The Mediations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        4.   Key Settlement Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        5.   Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        6.   Work-Month Challenges Based on Merged Entities . . . . . . . . 9

III. AN AWARD OF FEES TO PLAINTIFFS' COUNSEL SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Legal Standard:  The Percentage And Lodestar Approaches . . . . . . 10

    B.   Analysis:  The Requested Fee Award Represents A Reasonable Percentage Of The Settlement's Value . . . . . . . . . . . . . . . . . . . . . . . 12

        1.   The Settlement Provides An Exceptional Recovery      Given The Risks And Uncertainties Of The Action Against The Settling Defendants . . . . . . . . . . . . . . . . . . . . . . 13

        2.   Settlement Was Achieved As A Result Of Vigorous Litigation By Plaintiffs' Counsel . . . . . . . . . . . . . . . . . . . . . . 15

        3.   The Requested Fee Of 25% Of The Common Fund Is Well Within - If Not Substantially Below - The Range Typically Associated With Cases Of This Kind . . . . . . . . . . . . . . . . . . . 16

    C.   The Fee Is Reasonable Based On A Lodestar Cross-Check . . . . . . 17

    D.   The Reaction of the Class Supports the Fee Request . . . . . . . . . . . 18

IV.  THE EXPENSES INCURRED BY CLASS COUNSEL AND THE CLAIMS ADMINISTRATOR ARE REASONABLE AND SHOULD BE REIMBURSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.   THE PROPOSED ENHANCEMENTS TO CLASS REPRESENTATIVES ARE APPROPRIATE . . . . . . . . . . . . . . . . . . . . 20

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES                                                          PAGE NO.

*Bahramipour v. CitiGroup Global Markets, Inc.*, Case Nos. 04-cv-4440 and 07-cv-0801-CW (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Blum v. Stenson*, 465 U.S. 886 n.16 (1984) . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 17

*Boeing Company v. Van Gemert*, 444 U.S. 472 (1980); . . . . . . . . . . . . . . . . 12, 16

*Bowman v. UBS Fin. Servs., Inc.*, No. 04-3525 (MMC) (N.D. Cal.) . . . . . . . . 17

*Burns v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 04-4135 (MMC) (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Central RR & Banking Co. v. Pettus*, 113 U.S. 116 (1885) . . . . . . . . . . . . . 10, 11

*English & Zimmerlee v.Ecolab, Inc.*, No. 06 Civ. 5672 (PAC), 2008 WL 878456 (S.D.N.Y. Mar. 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garett v. Morgan Stanley* DW, No. 04-cv-1858 BEN (JMA) (S.D. Cal.) . . . . . . 17

*Gates v. WM Fin. Servs., Inc.*, No. 05-6061 CAS (SSx) (C.D. Cal.) . . . . . . . . . . 17

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 Lexis 8509 (N.D. Cal. Jan. 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Grabowski v. Chandler Asset Mgmt.*, No. D039354, 2003 Cal.App. Unpub. Lexis 2983 (Cal. App. Mar. 27, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hein v. PNC Fin. Servs. Group, Inc.*, 511 F. Supp. 2d 563 (E.D. Pa. 2007) . . . . 14

*Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48 . . . . . . . . . . . . . . . . . . . 18

*In Re Activision Securities Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) . . . . . . . . 11

*In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In Re Oracle Sec. Litig.*, 131 F.R.D. 688 (N.D. Cal. 1990) . . . . . . . . . . . . . . . . 11

*In re Veritas Software Corp. Secs. Litig.*, No. 03-CV-0283, 2005 U.S. Dist. LEXIS 30880, at *42 (N.D. Cal. Nov. 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Karim v. Banc of America Investment Services, Inc.*, Case No. 06-cv-167 (C.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Keith v. Volpe*, 501 F.Supp. 403 (C.D. Cal 1980) . . . . . . . . . . . . . . . . . . . . . . . 18

*Koehl v. Verio*, 142 Cal.App.4th 1313 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) . . . . . . . . . . . . . . . . . . . . . 19

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) . . . . 12, 16

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 16

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . 11

*Stanfield v. First NLC Fin. Servs., LLC*, No. 06-3892 SBA (N.D. Cal.) . . . . . . . 17

*Steinberg v. Morgan Stanley & Co. Inc.*, Case No. 06-cv-2628 (S.D. Cal.) . . . . 20

*Takacs v. A.G. Edwards and Sons, Inc.*, 444 F.Supp.2d 1100 (S.D. Cal. 2006) . 14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . 13

*Trustees v. Greenough*, 105 U.S. 527 (1882) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vincent v. Brand*, 557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) . . . . . . . . 11-13, 16, 18

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) 11, 12

**FEDERAL REGULATIONS**

29 C.F.R. § 541.203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. § 779.316, 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL RULES**

29 U.S.C. § 207(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE REGULATIONS**

Cal. Code Regs. tit. 8, §§ 11040(3)(D) & 11040(1)(c) . . . . . . . . . . . . . . . . . . . . . 15

**OTHER AUTHORITIES**

Department of Labor Opinion Letter, November 27, 2006 . . . . . . . . . . . . . . . . . 14

*Newberg on Class Actions* § 14.6 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . 11, 19

**APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs[1] in this Multi-District wage and overtime action seek attorneys' fees, reimbursement expenses and class representative enhancements, in conjunction with their motion filed concurrently herewith for final approval of a $39,000,000 class and collective action settlement (the "Settlement") with Defendants Wachovia Corporation, Wachovia Securities, LLC, and First Union Securities, Inc. (collectively, "Wachovia" or "Defendants").[2]

On May 11, 2009, this Court granted preliminary approval of the Settlement, and set a final approval and attorneys' fees hearing for October 5, 2009.  The Court found that on a preliminary basis, the Settlement fell within the range of reasonableness and, therefore, met the requirements for preliminary approval and appeared to be fair to absent class members and adequate, subject to the Court's further evaluation after absent class members receive Notice of the proposed Settlement.  The Court also conditionally certified both classes, designated Class Representatives, approved the Claims Administrator and Class Notice, and deemed the Settlement filed for all purposes.  The fully Executed Joint Stipulation of Class Action Settlement and Release was filed the following day, May 12, 2009, and is attached as Exhibit A to the Declaration of Jeffrey G. Smith

---

[1]    Jay Austin, Charles Badain, Bruce Barron, Robert Burakoff, Anthony Nicholas Codispoti, Shawn Dewane, Michael Dilustro, David Dougherty, Paul Firth, Amir Gauhar, Jason Goldstein, Gilbert Good, George Keim, Alan B. Krichman, Scott Lowe, Anthony J. Mooney, Carrie Morich, Priscilla Mueller, Mary O'Reilly, Gene Panasenko, Larry Phillips, Deane Rudofker, Scott Standel, Jason Clark, Wayne Ribnick, David Mizrahi, Howard Schneider, Anthony San Andres, Robert Huntley, Lloyd Cohen, Stephen Pincin, and Scott Dahlberg.

[2]    This settlement does not affect the settlement previously reached with Prudential Financial, Inc., Prudential Securities, Inc., and Prudential Equity Group, LLC, which was preliminarily approved by the Court on December 16, 2008. Three of the Named Plaintiffs identified above – Dilustro, Firth, O'Reilly, and Panasenko – only worked for the Prudential Defendants, and are only included herein to ensure that any claims against Wachovia are fully released; they will not receive any settlement consideration.

filed herewith.

The requested attorneys' fees of $9,750,000, reimbursed expenses of $436,661.87, and class representative enhancements of $15,000 each ($420,000 total), warrant approval by the Court. First, as discussed below, this litigation reached various milestones due to the collaborative effort of Plaintiffs' counsel. Furthermore, the Defendants willingly agreed not to oppose a request for fees by Plaintiffs' counsel, up to 25% of the common fund (*See* Joint Stipulation of Class Action Settlement and Release, ¶ 3.3), which is a reasonable figure by the Ninth Circuit's standards. Accordingly Plaintiffs respectfully request that the Court grant Plaintiffs' Application For Attorney Fees, Reimbursement Expenses and Enhancements To Class Representatives in its entirety.

## II.   **FACTUAL BACKGROUND AND LITIGATION HISTORY**

### A.   **Litigation Milestones**

#### 1.   **MDL Proceeding**

On December 22, 2006, the Judicial Panel on Multidistrict Litigation transferred multiple wage and overtime actions against Prudential Financial, Inc., Prudential Equity Group, Inc., Prudential Securities, Inc. (collectively, the "Prudential Defendants") and against the Wachovia Defendants to the Central District of California, where they were consolidated for all pretrial purposes in this Court pursuant to the Court's September 6, 2007 Order. The first federal case, *Dewane v. Prudential Equity Group, Inc. et al.*, was filed on October 19, 2005. In 2008, the Wachovia Defendants removed a state court action, *Clark et al. v. First Union Securities*, which was originally filed in Los Angeles County Superior Court on September 18, 2002. Clark was subsequently consolidated with this action. Since 2007, two Plaintiffs, Debra Reda-Cappos and Jonathan Graham, have dismissed their claims.

#### 2.   **The Parties' Exchange of Information**

In December 2007, Plaintiffs and the Wachovia Defendants (collectively,

1   "the parties") exchanged Initial Disclosures. In January 2008, the parties served
2   interrogatories and document requests. The parties also exchanged information
3   and documents on an informal basis, during the mediation process. In total, the
4   Wachovia Defendants produced over 12,000 pages of documents in response to
5   Plaintiffs' requests, and Plaintiffs produced over 3,800 pages of documents, as
6   well as individual written discovery responses. See Declaration of Jeffrey G.
7   Smith ("Smith Dec.") ¶ 4; Declaration of Niall P. McCarthy ("McCarthy Dec.") ¶
8   10. The Wachovia Defendants also produced extensive data regarding the
9   compensation rates of class members. Plaintiffs retained an expert to analyze the
10  data. See Smith Dec. ¶ 5; McCarthy Dec. ¶ 10.

11       In addition to written discovery and the exchange of data and documents,
12  the parties also took several depositions. On October 13, 2008, Plaintiffs deposed
13  John Alexander, the Director of Wachovia Securities' Private client Group -
14  Merger Services. The Wachovia Defendants produced Mr. Alexander as a person
15  knowledgeable "about the duties that Wachovia intends for its financial advisors
16  to perform, as well as the methods and means by which it ensures that financial
17  advisors perform those duties." Accordingly, Plaintiffs questioned Mr. Alexander
18  extensively on issues related to whether the duties of the Wachovia Defendants'
19  Financial Advisors and Trainees qualify them for any exemptions from the
20  requirements of the FLSA and state wage and hour laws. *See* Smith Dec. ¶ 6.

21       On September 20, 2008, Plaintiffs deposed Erik Karanik, the current
22  Director of Branch Incentives, Cost Management, and Agreements for Wachovia
23  Securities. Previously, he was a Compensation Strategist for Wachovia Securities,
24  whose job responsibilities were to oversee the design and administration of the
25  Financial Advisor compensation plans for Wachovia Securities' Private Client
26  Group. Mr. Karanik testified regarding (1) the nature and extent of any
27  guaranteed "draw" that was paid to the putative class members; (2) the Wachovia
28  Defendants' policies regarding pay deductions for "trading errors"; (3) the

1 Wachovia Defendants' policies regarding deductions for payments to support staff;

2 and (4) the various compensation plans in place during the relevant statutory

3 periods. See Smith Dec. ¶ 7.

4     On October 22, 2008 and October 24, 2008, the Wachovia Defendants

5 deposed two class representatives, Deane Rudofker and Scott Lowe, respectively.

6 *See* Smith Dec. ¶ 8.

7                **3.**    **The Mediations**

8     The parties participated in two mediation sessions, lasting two days each,

9 with Mark Rudy, an experienced and well-respected litigator and mediator of

10 wage and hour class actions.

11     The first mediation session was held on June 12 and 13, 2008 in San

12 Francisco. Representatives from the Co-Lead Counsel firms and the Plaintiffs'

13 Executive Committee attended on behalf of Plaintiffs; the Wachovia Defendants

14 were represented by both in-house and outside counsel. During the first mediation

15 session, the parties debated the current state of wage and hour law, discussed

16 recent settlements in analogous wage and hour cases, and requested and

17 exchanged further information. The parties also spent a great deal of effort to

18 define the temporal and substantive scope of the claims that the parties wished to

19 settle. Though the parties did not reach a settlement at the first mediation session,

20 they agreed that enough progress had been achieved to justify further efforts to

21 settle. Accordingly, after extensive meet and confer efforts, the parties agreed to

22 exchange additional information tailored to settlement efforts and engage in a

23 second mediation session. See McCarthy Dec. ¶ 5-6; Smith Dec. ¶ 9.

24     Armed with more detailed information, the parties participated in a second

25 mediation session on October 27 and 28, 2008, again in San Francisco. On the

26 second day of mediation, with Mr. Rudy's assistance, the parties reached a

27 tentative settlement agreement. See McCarthy Dec. ¶ 7; Smith Dec. ¶ 10.

28

### 4. **Key Settlement Terms**

The signed settlement is attached as Exhibit A to the Declaration of Jeffrey G. Smith filed in Support of Joint Motion for Preliminary Approval of Class and Collective Action Settlement, as noted above. The following are the key provisions:

a.        Wachovia Securities shall deposit the total sum of thirty-nine million dollars and no cents ($39,000,000.00) into an escrow account ("Settlement Escrow Account"). Class counsel are informed that Wachovia Securities has done so. Interest will accrue for the benefit of the Class from the date of entry of the Judgment. Any interest accrued prior to the Court's entry of Judgment shall belong to Wachovia Securities. The $39,000,000.00 sum (the "Gross Settlement Amount") shall be available to pay the following: attorneys' fees, litigation costs, enhancement payments to the Named Plaintiffs of $15,000 each, the Claims Administrator's fees and settlement administration costs, a payment to the California Labor Workforce Development Agency in association with the release of claims under California Labor Code section 2698 et seq., which shall be in the amount of $30,000, and claims made by Named Plaintiffs and those Class Members who indicate their desire to participate in the settlement by submitting a timely and valid "Qualifying Claim Form" (defined in the Stipulation) ("Participating Claimants").

b.        With respect to Named Plaintiffs and Class Members who worked as a Financial Advisor or Financial Advisor Trainee for one of the Wachovia Defendants in California, Illinois, Minnesota, New York, New Jersey, Ohio, or Pennsylvania, the applicable class periods are as follows: (i) in California, from September 18, 1998 through May 11, 2009; (ii) in Illinois, from August 30, 2003 through May 11,

2009; (iii) in Minnesota, from August 31, 2003 through May 11, 2009; (iv) in Pennsylvania, from May 5, 2003 through May 11, 2009; (v) in New York, from August 30, 1999 through May 11, 2009; (vi) in New Jersey, from September 21, 2000 through May 11, 2009; and (vii) in Ohio, from June 1, 2005 through May 11, 2009.

With respect to Class Members who worked in all other states and the District of Columbia:

(i) for those who submitted consents to join the Litigation before December 31, 2008, the period that runs from May 21, 2005, which is three years prior to the date of tolling the limitations period as agreed upon in the Tolling Agreement (defined in the Stipulation), to May 11, 2009;

(ii) for those who did not submit consents to join the Litigation before December 31, 2008, May 11, 2006 to May 11, 2009;

c.      A minimum of seventy percent (70%) of the Net Settlement Amount (the Gross Settlement Amount less attorneys' fees, costs, enhancement awards, and settlement administration costs) shall be paid. Any unclaimed portion of the Net Settlement Amount, up to a maximum of thirty percent (30%) of the Net Settlement Amount, will revert to Wachovia. As discussed in the Motion for Final Approval, as of September 12, 2009, approximately 73.3% of the net work months available have been claimed, and will be paid on. Based on a work-month agreement with Defendant, as discussed below, an additional approximately 5% of the Net Settlement Amount will be paid out to class members.

d.      The parties agreed to a notice process that incorporates diligent efforts to notify class members of this settlement. The process includes the mailing of notice, a reminder post card, and skip tracing

1    on returned notices. Defendants shall provide certain readily

2    accessible contact information for all class members to the Settlement

3    administrator to the extent permitted by law. Those class members

4    that do not respond to the mailed notices will receive a reminder by e-

5    mail, if their e-mail address is known to Wachovia. As described

6    below, this process was followed.

7    e.          The Net Settlement Amount will be distributed to Participating

8    Claimants by an independent Claims Administrator. The Claims

9    Administrator will determine each Participating Claimant's settlement

10   amount based on the Participating Claimant's number of Qualifying

11   Work Months and the Settlement Formula. A Qualifying Work

12   Month is each month in which a Class Member worked at least one

13   day in a Covered Position within the applicable Class Period. The

14   Settlement Formula is as follows: California will be treated

15   separately. The following states shall be referred to as "Tier 2

16   States": New York, New Jersey and Pennsylvania. The remaining 46

17   states shall be referred to as "Tier 1 States." The "Base Monthly

18   Payment" shall be calculated by dividing the Initial Settlement

19   Amount by the sum of the Qualifying Work Months worked in Tier 1

20   States plus 1.68 times the Qualifying Work Months worked in Tier 2

21   States plus 2.5 times the Qualifying Work Months worked in

22   California. Participating Claimants who worked in California shall

23   receive, for each Qualifying Work Month worked in California, a

24   settlement payment equal to 2.5 times the Base Monthly Payment,

25   less applicable taxes and withholdings. Participating Claimants who

26   worked in a Tier 2 State shall receive, for each Qualifying Work

27   Month worked in a Tier 2 State, a settlement payment equal to 1.68

28   times the Base Monthly Payment, less applicable taxes and

withholdings.  Participating Claimants who worked in a Tier 1 State shall receive, for each Qualifying Work Month worked in a Tier 1 State, a settlement payment equal to the Base Monthly Payment, less applicable taxes and withholdings.

### 5.    Claims Administration

On June 26, 2009, the Claims Administrator, The Garden City Group, mailed notice of the proposed settlement, claim form, and exclusion form to the 10,785 individuals on the list of potential Class Members ("Class List") provided by Defendants' counsel. *See* Declaration of Lance P. Blair Regarding Notice and Claims Administration ("Blair Dec.") ¶ 4.  Returned notices were either remailed if a forwarding address was provided, or "skip-traced" to find updated addresses. *Id*. at ¶¶ 5-6.  The Claims Administrator also established and maintained a toll free telephone helpline to provide callers with information regarding the Settlement. *Id*. at ¶ 9.

On August 7, 2009, GCG mailed a reminder postcard to any Class Member that had not submitted a Qualifying Claim Form, a Qualifying Exclusion Form, or an objection to the Settlement Agreement by August 5, 2009.  A total of five thousand six hundred seventy-two (5,672) reminder postcards were mailed. *Id*. ¶ 7.  On August 18, 2009, GCC sent an email to those Class Members who had not yet responded to the Class Notice; a total of three thousand four hundred ninety-three (3,493) Class Members. *Id*. ¶ 8.

The deadline to postmark Claim Forms or Exclusion Forms, or to submit an objection, was August 25, 2009.  As of September 11, 2009, the Claims Administrator has received claims from 7,250 Class Members, of which 107 claims were late. *Id*. at ¶ 10.  The total number of work months claimed by Class Members filing timely claims is 237,134, which is 73.3% of the work months available to be claimed. *Id*.  Of the 10,785 potential Class Members, the Claims Administrator has only received sixty-three exclusions or opt-outs, and only one

---

objection, from an individual who is not a class member. *Id.* at ¶¶ 12-13.

### 6. <u>Work-Month Challenges Based on Merged Entities</u>

Of the 7,250 claims received by the Claims Administrator, 1,137 claims included challenges to the number of qualifying work-months printed on the claim form. Co-Lead Plaintiffs' Counsel met and conferred with Counsel for Wachovia Securities regarding gaps in the work-month data that were responsible for a majority of the work month challenges. In particular, Wachovia had incomplete work-month data for those Financial Advisors who were absorbed by Wachovia as a result of Wachovia's purchase of Prudential Securities, Inc., Everen Capital Corporation, and Atlas Securities (the parties refer to these individuals as "legacy" class members). The gaps in data covered different numbers of work months depending on the legacy entity at issue. There were a maximum of 10 months in the pertinent legacy period for legacy Prudential employees, a maximum of 13 months for legacy Everen employees, and 6 months for legacy Atlas employees. As set forth below and after further negotiations with Class Counsel, Wachovia has agreed to address this issue by providing the pertinent claimants with credit for the maximum number of months in these legacy periods, even though this will result in a maximum benefit to those who may not have actually worked the maximum number of work months in the legacy period.

Counsel for Wachovia Securities has agreed that all "legacy" class members who submitted claim forms – whether or not the claim forms included a challenge to the work-month figures – will receive payment for the maximum potential shortfall caused by the incomplete data. For example, a Prudential legacy class member whose claim form included 50 months of eligibility, will receive payment for 60 months; an Everen legacy class member whose claim form included 50 months of eligibility, will receive payment for 63 months; and an Atlas legacy class member whose claim form included 50 months of eligibility, will receive payment for 56 months. The base  monthly settlement amount to class members

1  will not be decreased as a result of these additional work-months being added to
2  the total amount claimed.

3         As a result of this agreement to pay additional work-months to legacy class
4  members, the parties estimate that a total of approximately 79% of the work
5  months included in the settlement will be claimed.

6         With respect to the validity of work-month challenges that do not relate to
7  the legacy issue described above, as required by the Settlement Agreement, the
8  parties will meet and confer.  The number of those challenges is approximately
9  690.  If the parties are unable to agree on the validity of a work-month challenge,
10  the challenge will be submitted to the Court for resolution.

11  **III.    AN AWARD OF FEES TO PLAINTIFFS' COUNSEL SHOULD BE**
12          **APPROVED**

13         In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court
14  recognized that under the "common fund doctrine," a reasonable fee may be based
15  "on a percentage of the fund bestowed on the class."  The purpose of this doctrine
16  is that "those who benefit from the creation of the fund should share the wealth
17  with the lawyers whose skill and effort helped create it."  *In re Washington Public*
18  *Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  This rule is
19  firmly rooted in federal case law.  *See, e.g., Trustees v. Greenough*, 105 U.S. 527
20  (1882); *Central RR & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

21         The current cash value of the Settlement to Class members is $39,000,000.
22  Pursuant to the Settlement Agreement, Plaintiffs' counsel seek an award of
23  $9,750,000 (plus a *pro rata* share of post-Judgment interest), payable from the
24  Settlement Fund, which is 25% of the Settlement Fund obtained from the
25  Defendants.

26         **A.    Legal Standard:  The Percentage And Lodestar Approaches**
27         Under the common fund doctrine, courts typically award attorneys' fees
28  based on a percentage of the total settlement.  As the Ninth Circuit wrote in *Six*

1   *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990),

2   "[a]lthough statutory awards of attorneys fees are subject to 'lodestar' calculation

3   procedures, a reasonable fee under the common fund doctrine is calculated as a

4   percentage of the recovery." *Id.* at 1311. Every Supreme Court case that has

5   considered the award of attorneys' fees under the common fund doctrine has

6   determined those fees as a percentage of the recovery. *See Camden I*

7   *Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing

8   *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting that the percentage of

9   recovery method is the appropriate method to award attorney's fees in common

10   fund cases)); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Central R.R. &*

11   *Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Trustees v. Greenough*, 105 U.S.

12   527, 532 (1881).

13       In the Ninth Circuit, district courts have the discretion to use either the

14   percentage of the fund or the lodestar method to calculate attorneys' fees. *See*

15   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Williams v.*

16   *MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

17   Nevertheless, the Ninth Circuit has also recognized a "ground swell of support for

18   mandating a percentage of the fund approach in common fund cases . . . ." *Florida*

19   *v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). District courts in California have

20   held that the percentage of the fund method is far preferable to the lodestar method

21   because: (1) it aligns the interests of Class Counsel and the class; (2) it encourages

22   efficient resolution of the litigation by providing an incentive for early, yet

23   reasonable, settlement; and, (3) it reduces the demands on judicial resources. *In*

24   *Re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D. Cal. 1990) (noting that the

25   lodestar method has been "thoroughly discredited by experience"); *In Re*

26   *Activision Securities Litig.*, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989).

27       Historically, attorneys' fee awards have ranged from 20% to 50% of the

28   total settlement, depending on the circumstances of the case. Newberg on Class

Actions, 4th Ed. 2002, § 14.6, p. 550. However, the Ninth Circuit has established a "benchmark" fee of 25% in common fund cases. *Six Mexican Workers, supra,* 904 F.2d at 1311; *Williams, supra,* 129 F.3d at 1027; *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989). The percentage of recovery is based on the potential amount available to be claimed by the class, not the actual amount claimed. *Boeing Company v. Van Gemert,* 444 U.S. 472, 477-82 (1980); *Williams,* 129 F.3d at 1027. Under Ninth Circuit precedent, the district court has the discretion to adjust the 25% benchmark upward or downward, but such an adjustment is warranted only in "unusual circumstances." As the Ninth Circuit explained in *Paul, Johnson,* 886 F.2d at 272:

> The sole remaining issue is what percentage of the common fund would provide [plaintiffs' attorneys] reasonable compensation....We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. [Citation.] That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case. If such an adjustment is warranted, however, we caution that it must be made clear by the district court how it arrives at the figure ultimately awarded.

In *Vizcaino,* the Ninth Circuit surveyed fees awarded in common fund cases settled between the years 1996 and 2001 and found that 25% of the settlement value is the starting point or benchmark for the analysis of fees. *Vizcaino,* 290 F.3d at 1048. The benchmark percentage "should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).

## B.   Analysis: The Requested Fee Award Represents A Reasonable Percentage Of The Settlement's Value

In *Vizcaino,* the Ninth Circuit noted that the 25% benchmark should be considered, and adjusted accordingly, based on the circumstances of the particular

1  case. *Vizcaino*, 290 F.3d at 1048.  For example, in that case, the Ninth Circuit
2  found that fees equaling 28% of the common fund were appropriate after
3  considering several factors, including: (1) exceptional results for the plaintiffs; (2)
4  the risk for Class Counsel; (3) whether any individual non-monetary benefits are
5  obtained; (4) whether the fee is within the range typically associated with cases of
6  this kind; and (5) the burden on Class Counsel of prosecuting the case. *Id.* at
7  1048-1050.

8       The fee award requested here is supported by the factors identified in
9  *Vizcaino*.

10       **1.**     **The Settlement Provides An Exceptional Recovery**
11              **Given The Risks And Uncertainties Of The Action**
12              **Against The Settling Defendants**

13       "Exceptional results are a relevant circumstance" in deciding a fee award in
14  common fund cases. *Vizcaino, supra*, 290 F.3d at 1048 (*citing Torrisi v. Tucson*
15  *Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (it is proper to consider
16  plaintiffs' counsel's "expert handling of the case")).  As described in the
17  accompanying Motion for Final Approval, this case presented great risks for
18  Plaintiffs and a highly uncertain recovery.  Given this risk and uncertainty, the $39
19  million settlement (plus post-Judgment interest)  is an exceptional result.

20       In particular, in order to succeed in this case, Plaintiffs would have to
21  prevail on a series of controversial factual and legal issues.  Most critically,
22  Plaintiffs would have to overcome Wachovia's argument that its Financial
23  Advisors and Trainees are exempt from state and federal wage and hour laws.
24  Though the same issue has arisen in lawsuits against many of Wachovia's
25  competitors, the issue has not been settled.

26       The primary exemption at issue is the administrative exemption, which
27  requires that Financial Advisors engage in certain duties (the "duties" test), and
28  that they receive certain minimum salary payments (the "salary basis" test).  The

"duties" test, in this case, turns on whether Plaintiffs are engaged primarily in sales, or primarily in dispensing financial advice. *See* 29 C.F.R. § 541.203(b). This issue has been hotly disputed in several cases, but never resolved. *See, e.g., Takacs v. A.G. Edwards and Sons, Inc.*, 444 F.Supp.2d 1100, 1115 (S.D. Cal. 2006). The Department of Labor, however, has opined on the issue, in a November 27, 2006 Opinion Letter holding that stockbrokers are exempt under the FLSA's administrative exemption. The DOL further concluded that the draw-plus-commission pay structure employed by most brokerage houses, including Wachovia, meets the "salary basis" test. Although the DOL letter is not controlling, it nonetheless presents a significant risk factor for Plaintiffs. *See also Hein v. PNC Fin. Servs. Group, Inc.*, 511 F. Supp. 2d 563, 569 (E.D. Pa. 2007) (holding that financial advisors' duties satisfy the administrative exemption); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 Lexis 8509 (N.D. Cal. Jan. 17, 2007) (recognizing that the DOL letter "significantly weakened" stockbrokers' wage and hour claims).

Another potential defense for Wachovia is the commissioned sales exemption. 29 U.S.C. § 207(i). In Plaintiffs' view, the exemption does not apply because Wachovia does not qualify as a "retail or service establishment," and does not pay employees "in excess of one and one-half times the minimum" wage on a weekly basis as required by the regulations. 29 C.F.R. § 779.316, 317; *see Takacs*, 444 F. Supp. 2d at 1115 (finding that the defendant, a brokerage firm, was not a "retail or service" establishment). The applicability of this exemption to stockbrokers, however, remains unsettled, as at least one district court has found that the regulations' list of "retail and service establishments" is subject to modification. *See English & Zimmerlee v.Ecolab, Inc.*, No. 06 Civ. 5672 (PAC), 2008 WL 878456 (S.D.N.Y. Mar. 31, 2008).

In order to prevail through litigation, Plaintiffs would also have to overcome several exemptions to the state wage and hour laws asserted in the action. For

1  example, a significant portion of the work months for which Plaintiffs seek
2  recovery in this action are based on violations of California wage and hour laws.
3  In order to succeed on these California claims, Plaintiffs will have to overcome the
4  California administrative exemption, the "commissioned employee" exemption,
5  and possibly even the outside sales exemption. *See* Cal. Code Regs. tit. 8,
6  §§ 11040(3)(D) & 11040(1)(c); *Grabowski v. Chandler Asset Mgmt.*, No.
7  D039354, 2003 Cal.App. Unpub. Lexis 2983 (Cal. App. Mar. 27, 2003) (in a
8  distinguishable but informative context, holding that the California administrative
9  exemption applied to an investment advisor).

10        If Wachovia were to succeed on establishing any of these exemptions,
11  Plaintiffs' claims would be severely, if not completely, diminished.  In light of this
12  risk, the proposed settlement is an exceptional result for the class.

13                    **2.    Settlement Was Achieved As A Result Of Vigorous**
14                          **Litigation By Plaintiffs' Counsel**

15        As detailed above, and in the accompanying Motion For Final Approval of
16  Class and Collective Action Settlement, Plaintiffs and their counsel have
17  vigorously litigated this case against Defendants, extensively investigating and
18  pursuing the Class claims.  Plaintiffs' counsel were firmly aware of the strength of
19  the case, the facts at issue, and the risks in going forward against Defendants.

20        During this process, Plaintiffs' counsel agreed to advance all costs, and this
21  case was undertaken on a contingency basis against worthy and well-financed
22  opponents who challenged Plaintiffs' case at every opportunity.  Plaintiffs'
23  counsel expended considerable time and resources with no assurance that they
24  would receive any compensation.

25        Moreover, even after finalizing the Settlement Agreement, Plaintiffs'
26  counsel have continued vigorously advocating on behalf of the class to ensure that
27  all class members receive the complete settlement payment to which they are
28  entitled.  For example, Plaintiffs' counsel have fielded dozens of calls during the

1 claims administration period, on a weekly basis, from class members with often-
2 complicated inquiries regarding the nature of the settlement.  Similarly, Plaintiffs'
3 counsel engaged in critical negotiations with counsel for Wachovia Securities, to
4 ensure that all "legacy" class members received the full settlement amount to
5 which they were entitled.  These negotiations were successful, and all legacy
6 claimants will received the full amount to which they were entitled, whether they
7 submitted a challenge or not.

> ### 3.   The Requested Fee Of 25% Of The Common Fund
> ### Is Well Within - If Not Substantially Below - The
> ### Range Typically Associated With Cases Of This Kind

11 A relevant factor when awarding fees is whether the fee is within the range
12 typically associated with cases of its kind.  *Vizcaino*, 290 F.3d at 1048-50.  The
13 Ninth Circuit has established a "benchmark" fee of 25% in common fund cases, as
14 stated above.  *Six Mexican Workers, supra*, 904 F.2d at 1311.  The percentage of
15 recovery is based on the potential amount available to be claimed by the class, not
16 the actual amount claimed.  *Boeing Company v. Van Gemert*, 444 U.S. 472, 477-
17 82 (1980).

18 Under Ninth Circuit precedent, the district court has the discretion to adjust
19 the 25% benchmark upward or downward, but such an adjustment is warranted
20 only in "unusual circumstances."  As the Ninth Circuit explained in *Paul,*
21 *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989):

> The sole remaining issue is what percentage of the common fund
> would provide [plaintiffs' attorneys] reasonable compensation . . .
> We note with approval that one court has concluded that the 'bench
> mark' percentage for the fee award should be 25 percent. [Citation.]
> That percentage amount can then be adjusted upward or downward
> to account for any unusual circumstances involved in this case.  If
> such an adjustment is warranted, however, we caution that it must be
> made clear by the district court how it arrives at the figure ultimately
> awarded.

27 *Id.*  In this case there are no "unusual circumstances" that warrant a downward
28 departure from the benchmark 25% fee.

1     The fee is also reasonable when compared to customary private contingent

2   fee agreements, which usually range between 30% to 40% of the recovery. *See*

3   *Blum, supra*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of

4   whatever amount the plaintiff recovers. In those cases, therefore, the fee is

5   directly proportional to the recovery."). Thus, customary contingent fee

6   agreements obtained in the private marketplace, which range between 30% and

7   40% of the money recovered, also validate the percentage fee requested in this

8   case.

9     Moreover, in the other known wage and hour class actions in California that

10  recently have received final approval, class counsel were awarded a 25% fee.

11  These cases include the settlement with the Prudential Defendants in this action

12  recently approved by the Court, and the following: *Gates v. WM Fin. Servs., Inc.*,

13  No. 05-6061 CAS (SSx) (C.D. Cal.) (25% fee awarded); *Stanfield v. First NLC*

14  *Fin. Servs., LLC*, No. 06-3892 SBA (N.D. Cal.) (25% fee awarded); *Burns v.*

15  *Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 04-4135 (MMC) (N.D. Cal.)

16  (25% fee awarded); *Garett v. Morgan Stanley* DW, No. 04-cv-1858 BEN (JMA)

17  (S.D. Cal.) (25% fee awarded); *Bowman v. UBS Fin. Servs., Inc.*, No. 04-3525

18  (MMC) (N.D. Cal.) (25% fee awarded)..

19  **C.    The Fee Is Reasonable Based On A Lodestar Cross-**

20          **Check**

21    The fee request is further supported by the total lodestar calculation for

22  Plaintiffs' Counsel. For the inception of these cases, through August 15, 2009,

23  Plaintiffs' counsel have combined lodestars (*i.e.* actual hours expended multiplied

24  by customary hourly billing rates) of $7,298,211.17. McCarthy Dec. ¶ 16, Ex. B.

25  This amount will likely grow by five to ten percent based on work incurred during

26

27

28  ///

the claims administration process.[3] *See id.* ¶ 18; Smith Dec. ¶ 16.  With just Co-Lead Counsel's time increasing by 7.5%, the lodestar would increase to approximately $7,500,462.

Based on this lodestar, the requested fee award reflects a modest multiplier of 1.3.  Such a multiplier falls on the lower end of multipliers typically awarded in complex class actions in the Ninth Circuit.  *See Vizcaino*, 290 F.3d at 1048-50 (applying 3.65 multiplier); *In re Veritas Software Corp. Secs. Litig.*, No. 03-CV-0283, 2005 U.S. Dist. LEXIS 30880, at \*42 (N.D. Cal. Nov. 15, 2005) (awarding fee request with multiplier of 4.0 where motion to dismiss pending and no formal discovery taken); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995) (in which a multiplier of 3.6 was called "well within the acceptable range for fee awards in complicated class action litigation"); *Keith v. Volpe*, 501 F.Supp. 403 (C.D. Cal 1980) (3.5 multiplier); *see also In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at \*16 (E.D. Pa. June 2, 2004) (average multiplier awarded in common fund cases was 4.35).

Accordingly, Class Counsel submits that the attorneys' fee requested as a percentage of the Settlement Amount is fair and reasonable when cross-checked with the lodestar and multiplier analysis.

**D.     The Reaction of the Class Supports the Fee Request**

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at \*48 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.").  Here, notice of the proposed Settlement, in the form approved by the Court, was mailed to over 10,000 Class Members.  In addition to describing the case, and how to either exclude oneself or object to any aspect of

---

[3]     This lodestar amount does not include time spent by counsel on this application for attorneys' fees.

the Settlement, the Notice further advised Class Members that Class Counsel intended to apply for an award of attorneys' fees of 25% of the Settlement Amount, and for reimbursement of out-of-pocket expenses incurred by Class Counsel. Class Members had until August 25, 2009 to object to any aspect of the Settlement. Not a single Class Member has objected to the fee request or the request for reimbursement of expenses. The absence of any objection clearly supports the fee request.

## IV. THE EXPENSES INCURRED BY CLASS COUNSEL AND THE CLAIMS ADMINISTRATOR ARE REASONABLE AND SHOULD BE REIMBURSED

Class Counsel also respectfully request that they be reimbursed for the litigation costs and expenses in the amount of $436,661.87 (plus a *pro rata* share of any post-Judgment interest), which is the amount of actual costs incurred since the inception of these cases, that have not yet been reimbursed to Class Counsel. McCarthy Dec. ¶ 16, Ex. B. Under the common fund doctrine, Class Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Brand*, 557 F.2d 759, 769 (9th Cir. 1977). All of the costs and expenses for which reimbursement is sought were reasonable and necessary in order to obtain the result achieved. Throughout the course of this case, Co-Lead Counsel have maintained contemporaneously documented time and expense records in order to efficiently supervise the prosecution of this case. McCarthy Dec. ¶¶ 15, 17.

It is common and appropriate for Class Counsel to be reimbursed out of the common fund for all reasonable litigation expenses, including expenses for document production, expenses for experts and consultants, expenses for delivery of documents and expenses for Class administration including the mailing of Class Notices. *See Newberg on Class Actions* § 14.6 (4th ed. 2002); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

1    Class Counsel further request that the Court approve reimbursement of the
2    Claims Administrator's expenses, in an amount not to exceed $295,650.09.  As
3    detailed in the Declaration of Lance P. Blair, as if September 15, 2009, the Claims
4    Administrator has incurred a total of $170,650.90 in fees and expenses in the
5    administration of this settlement.  *See* Blair Dec. ¶ 15.  The Claims Administrator
6    estimates that it will incur an additional $100,000 to $125,000 in fees and
7    expenses to complete all of the tasks remaining to be completed in connection
8    with administration of the Settlement.  *See id.*  The Settlement Agreement and
9    Class Notice estimated that the Claims Administration costs would total $300,000.
10   Accordingly, the request for up to $295,650.09 (plus a *pro rata* share of any post-
11   Judgment interest), is within the estimate provided to the Court and the Class.

12   **V.    THE PROPOSED ENHANCEMENTS TO CLASS**
13   **REPRESENTATIVES ARE APPROPRIATE**

14       The award of $15,000 per Class Representative as an enhancement payment
15   is well within the range of such payments commonly awarded in litigation of this
16   nature, and is less than the enhancement payments awarded to the named plaintiffs
17   in other recent settlements of stockbroker wage and hour class actions.  *See*
18   *Steinberg v. Morgan Stanley & Co. Inc.*, Case No. 06-cv-2628 (S.D. Cal.)
19   ($20,000 enhancements); *Glass v. UBS Financial Services, Inc.*, Case No. 06-cv-
20   4068 (N.D. Cal.) ($25,000 enhancements); *Bahramipour v. CitiGroup Global*
21   *Markets, Inc.*, Case Nos. 04-cv-4440 and 07-cv-0801-CW (N.D. Cal.) ($20,000
22   enhancements); *Karim v. Banc of America Investment Services, Inc.*, Case No. 06-
23   cv-167 (C.D. Cal.) ($25,000 enhancements).

24       Each of these Class Representatives provided substantial assistance to Class
25   Counsel throughout the case and incurred personal risk in bringing the lawsuit on
26   behalf of the class.  *See Koehl v. Verio*, 142 Cal.App.4th 1313, 1328 (2006) (in
27   wage and hour class action where defendant prevailed at trial, the named plaintiffs
28   were held liable, jointly and severally, for the defendant's attorney's fees).  Each

of the Class Representatives responded to formal discovery requests, provided

initial disclosures, and made themselves available for deposition (two were

ultimately deposed). *See* Smith Dec. ¶¶ 4, 8.  The named Plaintiffs also provided

invaluable assistance to Class Counsel in explaining Defendant's compensation

policies and employment practices, reviewing documents, assisting in preparing

counsel for mediation, and participating in the settlement negotiations (by making

themselves available to Class Counsel, if needed during the mediation).  Their

efforts in bringing the lawsuit have conferred a benefit on the Class Members.

Furthermore, there have been no objections to the Enhancement Awards by any

member of the Class.  Class Counsel respectfully request that the Court approve

the requested Class Representative Enhancement Awards of $15,000, to all 28

Class Representatives who are part of the Wachovia settlement class, for a total of

$420,000, plus a *pro rata* share of any post-Judgment interest.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' counsel respectfully requests that this

Court GRANT approval of an award of attorneys' fees, expenses and class

representative enhancements, and enter the proposed Judgment.

Dated: September 21, 2009     **COTCHETT, PITRE & McCARTHY**

By: _____
          JOSEPH W. COTCHETT

Dated: September 21, 2009     **WOLF HALDENSTEIN ADLER**
                              **FREEMAN & HERZ LLP**

By: _____
          JEFFREY G. SMITH

          *Co-Lead Counsel for Plaintiffs*