Kevin J. McInerney (SBN 46941)
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Telephone: 775-849-3811
Facsimile: 775-849-3866
Email: kevin@mcinerneylaw.net

*Attorneys for Gerald Rouse*
*Proposed Intervenor-Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WACHOVIA SECURITIES, LLC WAGE AND HOUR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS<br><br>*Rouse v. First Union Securities, Inc. and Wachovia Securities LLC*<br>S.D.N.Y. Case No. 05-cv-08852 | MDL No. 07-1807 DOC<br><br>**DECLARATION OF KEVIN J. McINERNEY IN SUPPORT OF PROPOSED PLAINTIFF IN INTERVENTION AND OBJECTOR GERALD ROUSE'S OPPOSITION TO AND OBJECTION TO FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND AWARD OF ATTORNEY'S FEES**<br><br>Date:   October 5, 2009<br>Time:   8:30 a.m.<br>Judge:  Hon. David O. Carter<br>Dept.:  9D |

---

1

DECLARATION OF KEVIN J. MCINERNEY

I, Kevin J. McInerney, declare as follows:

1. At all times, Gerald Rouse has been treated by all plaintiffs' counsel in this MDL action as a class representative. As his counsel, I filed his class action complaint in the Southern District of New York nearly four years ago and filed pleadings in the later MDL proceedings. I participated, on Mr. Rouse's behalf, in appearances before this Court once these matters were transferred. I filed papers in this action in the lengthy and contentious issue of who would serve as lead counsel.

2. Once lead counsel and an Executive Committee were created, I was never contacted with respect to the settlement negotiations that apparently took place between lead counsel and counsel for the defendants. I was not aware of the proposed settlement terms until I received, many months later, a request from John Kelson that my client sign a form letter approving a settlement that was only vaguely described. Upon reviewing that draft, I promptly sent Mr. Cotchett an email asking him to contact me to discuss certain concerns I had. A true copy of that Email is attached as Exhibit A.

3. In response to that email, I received a phone call from Niall McCarthy within two weeks. We spoke telephonically for at least ten minutes. During this conversation, I clearly enunciated two very different and

distinct concerns I had about the proposed allocation of the settlement proceeds. One concern was that, unlike all other stockbroker cases in which I had been involved or was aware of, there was no detailed review of the national allocation by the Court or a Special Master appointed by the Court. I discussed the fact that New Jersey's effective statute of limitations was really two years rather than six, decisional law changes impacting New York state claims, and the allocation proposed for California workers as opposed to other states. Mr. McCarthy seemed to be unaware of the two year versus six year issue, but did state that with respect to California's share, a new allocation was being reached. I then explained that I thought that there should be a different allocation among the brokers who were treated as W-2 employees and those who were transformed by First Union into 1099 independent contractors. I pointed out some of the disadvantages of being treated as an independent contractor and said that those should have been reflected in the settlement. Mr. McCarthy seemed to have no prior knowledge of the 1099 issue and stated that he was aware that anyone had previously raised it.

4. Following this fairly lengthy and detailed telephone conversation, I heard nothing back from Mr. Cotchett or Mr. McCarthy. The next

contact was from Mr. Cotchett's office urging me to obtain my client's signature on the settlement agreement so that preliminary approval could go forward. I sent to Mr. Cotchett's office another email, a true copy of which is attached hereto as Exhibit B. Despite the fact that I had made it abundantly clear that I had serious issues with the proposed settlement, a review of the preliminary approval proceedings indicates that lead counsel did not so advise this Court that not all parties had agreed to sign the settlement document.

5. The next surprise to me was that Mr. Rouse was not sent a claim form. I contacted the claims administrator and was informed that Mr. Rouse was not in the database provided by the defendants. Faced with the absurd situation that he was being viewed as a class representative, potentially eligible for an enhancement award, and yet he was not in receipt of a claim form, I timely filed on Mr. Rouse's behalf a Motion to Intervene and an Objection to the settlement. Following that filing, I had a conference call requested by Niall McCarthy and Jeff Smith. Mr. McCarthy suggested that there might be a "carve-out" of Mr. Rouse and others who were similarly situated. Mr. McCarthy stated that he didn't think Mr. Rouse had standing because he wasn't an employee and I asked how many other individuals might be in Mr. Rouse's

4
DECLARATION OF KEVIN J. McINERNEY

circumstances. Mr. McCarthy said that the defendants had been asked to provide that data, had not yet done so, but that the number was probably "in the hundreds." We then had a discussion of how it was not uncommon for brokerage firms to treat their brokers as independent contractors and Jeff Smith stated that I was probably right about Rouse really being an employee. Mr. McCarthy indicated that it was probably simply the defendants trying to slip the issue by in settlement. Mr. Smith said that "we have some money left over [unclaimed] so you can probably engineer a separate settlement." I stated I would speak to my client about their suggestion of a "carve-out," but if the defendants had any interest in resolving it, they could contact me.

6. I did speak to Mr. Rouse and thereafter sent Mr. McCarthy an email, a true copy of which is attached hereto as Exhibit C. In response, Mr. McCarthy sent me back an email, a copy of which is attached as Exhibit D. While it well might be the current position of lead counsel that Mr. Rouse was never a class member, this is seemingly contradicted by his presence on the Settlement Agreement as a signatory. While lead counsel may now take the position that Mr. Rouse is not currently a class member, it was their suggestion that a "carve-out" be made. This was not a term that I utilized because it has always been Mr. Rouse's

position and my position that he was very much a party to this class action.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on September 28, 2009 at Reno, Nevada.

                         <u>Kevin J. McInerney</u>
                         Kevin J. McInerney