Jeffrey G. Smith (133113)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Ave.
New York, New York 10016
Tel. (212) 545-4600
Fax. (212) 545-4653

Attorneys for Plaintiffs Charles Badain
And Mary O'Reilly

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WACHOVIA SECURITIES, LLC, WAGE AND HOUR LITIGATION | MDL 1807 |
| | Master File No.: 07-1807 DOC |
| This Document Relates to: | **SUPPLEMENTAL DECLARATION OF JEFFREY G. SMITH IN SUPPORT OF PLAINTIFFS' RESPONSE TO OBJECTOR GERALD ROUSE'S SEPTEMBER 28, 2009 BRIEF** |
| | Date: October 5, 2009<br>Time: 3:00 p.m.<br>Ctrm: 9D<br>Hon. David O. Carter |
| ALL ACTIONS | |

I, JEFFREY G. SMITH, do certify as follows:

1. I am a member of the law firm of Wolf Haldenstein Adler Freeman & Herz LLP with offices at 270 Madison Avenue, New York, New York 10016, attorneys for plaintiffs Charles Badain and Mary O'Reilly in this matter. I am co-lead counsel in this matter with Joseph Cotchett and am fully familiar with the facts and circumstances surrounding this litigation, and I submit this Declaration in opposition to the Intervention Motion and Objection of Gerald Rouse and the Declaration of Kevin J. McInerney in support thereof and in further support of Plaintiffs' Motion for Final Approval of Class and Collective Action in this MDL action filed herewith.

2. I have reviewed the Declaration of Kevin J. McInerney In Support of Proposed Plaintiff in Intervention and Objector Gerald Rouse's Opposition to and Objection to Final Approval of the Proposed Settlement and Award of Attorney's Fees and find it in error regarding things Mr. McInerney asserts, in paragraph 5 of his declaration, that I and Niall McCarthy of Mr. Cotchett's office said in a phone call conference among him, Mr. McCarthy, and me.

3. Mr. McInerney refers to Mr. McCarthy having suggested a "carve-out" of Mr. Rouse's claims. I do not recall Mr. McCarthy suggesting such a thing. Indeed, the purpose of our call was to advise Mr. McInerney that the defendants' position was that Mr. Rouse and his claims to the extent they involved "FiNet" were never included in the proposed Wachovia settlement or the data they provided us in mediation. My recollection is that Mr. McInerney, rather than Mr. McCarthy, referred to Mr. Rouse and other FiNet brokers as a carve-out.

4. Mr. McInerney also asserts that I said he "was probably right about Rouse really being an employee." My recollection is that I said I had dealt with independent contractor status, often referred to as 1099 status after the IRS form used instead of a W-2, in insurance broker cases and trucker cases and that if the

facts were as I then, and for the first time, understood them to be based on what Mr. McInerney and defendants had said, he might well have a case, but that it had not been part of our mediation since none of the mediation attendees knew about FiNet or that aspect of Mr. Rouse's claim. I had not, until Mr. Rouse's objection was filed, encountered 1099 status in stock broker cares. Mr. Rouse's FiNet claim did not appear on the face of his complaint and, thus, did not appear in our consolidated complaint in this matter, and I was learning of it for the first time.

5. I did suggest during that conference call that since there was apparently going to be some reversionary amount left from the Wachovia settlement if approved, Mr. McInerney might be able to arrive at a settlement with the defendant for his FiNet claims that were not part of the proposed settlement.

6. Mr. McInerney never provided my office with a copy of a December 12, 2005 letter from Defendants to Mr. McInerney, in which Defendants point out to Mr. McInerney that "Plaintiff is not an 'employee' of Defendants, as he alleges in the Complaint. Plaintiff worked as an independent contractor through 'FiNet,' an entity separate from both First Union and Wachovia." My office did not see this letter until Defendants provided it, after Mr. McInerney filed his objection.

7. My office never received responses from either of Mr. McInerney's clients – Gerald Rouse and Peter Janowsky – to Wachovia's First Interrogatories or Requests for Production of Documents.

8. Co-Lead Counsel, and all members of the Executive Committee, were fully engaged in settlement negotiations in this case. All members of the Executive Committee – or designees thereof – attended the first mediation session with Mediator Mark Rudy; a total of 14 Plaintiffs' attorneys. Realizing that such a large group would hamper settlement negotiations, a much smaller group of four to six Plaintiffs' attorneys participated directly in the subsequent mediations. All members of the Executive Committee were involved in preparing for the mediation

sessions, and all members of the Executive Committee reviewed various drafts of the settlement agreement, and provided input thereon.

I declare under penalty of perjury that the foregoing is true and accurate.

_____
Jeffrey G. Smith

Dated:   New York, New York
         September 30, 2009