1              **UNITED STATES DISTRICT COURT**

2             **CENTRAL DISTRICT OF CALIFORNIA**

3         **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                      – – – – – – –

5

6   IN RE: WACHOVIA SECURITIES,        )
    LLC, WAGE AND HOUR LITIGATION      )
7   AND RELATED CASES                  )
                                       )
8                                      ) MDL No. 07-1807-DOC
    _____)

9

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                        Motions

15                 Santa Ana, California

16              Monday, October 5, 2009

17

18

19

20

21  Jane C.S. Rule, CSR 9316
22  Federal Official Court Reporter
    United States District Court
23  411 West 4th Street, Room 1-053
    Santa Ana, California 92701
24  (714) 558-7755

25  09-10-05Wachovia

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR CLASS PLAINTIFFS:

 4
             WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ, LLP
 5           BY:  JEFFREY G. SMITH
                  Attorney at Law
 6           270 Madison Avenue
             New York, New York 10016
 7           (212) 545-4600

 8
             COTCHETT, PITRE & MC CARTHY
 9           BY:  NIALL P. MC CARTHY
                  NANCY L. FINEMAN
10                JUSTIN T. BERGER
                  Attorneys at Law
11           840 Malcom Road
             Suite 200
12           San Francisco, California 94010
             (650) 697-6000
13

14           LAW OFFICES OF JOHN M. KELSON
             BY:  JOHN M. KELSON
15                Attorney at Law
             1999 Harrison Street
16           Suite 700
             Oakland, California 94612
17           (510) 465-1326

18
             FUTTERMAN, HOWARD, WATKINS, WYLIE & ASHLEY
19           BY:  JOHN R. WYLIE
                  Attorney at law
20           122 S. Michigan Agenue
             Suite PH2
21           Chicago, Illinois 60603
             (312) 427-3600

22

23

24

25
```

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CLASS PLAINTIFFS (Continued):

4
              BARROWAY, TOPAZ, KESSLER, MELTZER, CHECK, LLP
5             BY:  GERALD D. WELLS, III
                  Attorney at law
6             280 King of Prussia Road
              Radnor, Pensylvania 19087
7             (610) 822-2233

8
              KNAPP, PETERSEN & CLARKE
9             BY:  STEPHEN M. HARRIS
                  Attorney at Law
10            550 North Brand Boulevard
              Suite 1500
11            Glendale, California 91203-1922
              (818) 547-5149

12

13            LOVELL, STEWART, HALEBIAN, LLP
              BY:  JOHN HALEBIAN
14                Attorney at Law
              317 Madison Avenue
15            New York, New York 10017
              (212) 500-5010

16

17

18

19

20

21

22

23

24

25

MDL NO. 07-1807 DOC - 10/05/2009

4

```
 1   APPEARANCES OF COUNSEL (Continued):

 2

 3   FOR DEFENDANTS WACHOVIA SECURITIES, LLC, et al.:

 4            MUNGER, TOLLES & OLSON
              BY:  MALCOM A. HEINICKE
 5                 Attorney at Law
              560 Mission Street
 6            27th Floor
              San Francisco, California 94105
 7            (415) 512-4000

 8

              SEYFARTH SHAW, LLP
 9            BY:  LORIE E. ALMON
                   BRETT C. BARTLETT
10                 Attorneys at Law
              One Peachtree Pointe
11            1545 Peachtree Street
              Suite 700
12            Atlanta, Georgia 30309-2401
              (404) 885-1500

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                       **I N D E X**

2

3

4    1.   MOTION BY GERALD ROUSE TO INTERVENE

5    2.   JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
          SETTLEMENT OF CLAIMS AGAINST THE PRUDENTIAL DEFENDANTS
6
7    3.   HEARING ON APPLICATION FOR ATTORNEY FEES, EXPENSES
          AND CLASS REPRESENTATIVE ENHANCEMENTS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MDL NO. 07-1807/DOC - 10/05/2009

6

```
 1            SANTA ANA, CALIFORNIA, MONDAY, OCTOBER 5, 2009

 2                            (2:52 p.m.)

 3            THE COURT:  Okay.  Let me call the matter of

 4   Wachovia Securities Hour Litigation, MDL Number 07-1807.

 5            And then counsel, can you quickly make your

 6   appearances, please.  Let's begin with the plaintiffs.

 7            MR. SMITH:  Jeffrey G. Smith from Wolf,

 8   Haldenstein, Adler, Freeman and Herz, LLP.

 9            THE COURT:  Thank you.

10            MS. FINEMAN:  Good afternoon, your Honor.  Nancy

11   Fineman with Niall McCarthy of Cotchett, Pitre and McCarthy,

12   co-lead counsel.

13            THE COURT:  Okay.

14            And counsel in the next row back, who is with us

15   today?  Identify yourselves.

16            MR. KELSON:  Your Honor, John Kelson for the

17   plaintiffs.

18            THE COURT:  Which plaintiffs, Counsel?

19            MR. KELSON:  The original plaintiffs, before

20   consolidation, I represented --

21            (Interruption in the proceedings.)

22            THE COURT:  I can't hear either.

23            Counsel, come on up to the lectern.  Let's slow

24   this down and get your appearances, and I don't have a

25   photographic memory.  You can help me.
```

MDL NO. 07-1807 DOC – 10/05/2009

7

```
1            MR. KELSON:  Your Honor, John Kelson.

2            Prior to consolidation, I represented Carrie

3   Morich and Scott Lowe.

4            THE COURT:  Okay.

5            And counsel?

6            MR. WYLIE:  Good afternoon, your Honor.  John

7   Wiley.  Prior to consolidation, I represented Mr. Mooney and

8   Keim and Barron.

9            THE COURT:  Okay, thank you very much.

10            MR. BERGER:  Good afternoon, your Honor.  Justin

11   Berger with Cotchett, Pitre and McCarthy, also co-lead

12   counsel.

13            THE COURT:  Thank you very much.

14            MR. WELLS:  Good afternoon, your Honor.  Gerald

15   Wells, III, from the law firm Barroway, Topaz, Kessler,

16   Meltzer and Check.  Prior to consolidation, I represented

17   Shawn Dewane.

18            THE COURT:  Okay.  Thank you.

19            MR. HARRIS:  Good afternoon, your Honor.  Stephen

20   Harris with Knapp, Petersen and Clarke.  Prior to

21   consolidation, I represented Jason Clark, Howard Snyder,

22   Mr. Pinton and Mr. Dahlberg.  Thank you.

23            THE COURT:  Okay.

24            MR. HALEBIAN:  Good afternoon, your Honor.  John

25   Halebian with Lovell, Stewart, Halebian, LLP.  Along with
```

JANE C.S. RULE, CSR NO. 9316 – U.S. COURT REPORTER

MDL NO. 07-1807 DOC - 10/05/2009

8

```
1    Mr. Kelson, and all the attorneys he represented, Carrie

2    Morich, Scott Lowe and Allen Kritchman.

3              THE COURT:  Okay.

4              MR. SMITH:  Your Honor, I'd like to note for the

5    record that counsel --

6              THE COURT:  I can't hear you.  Use the microphone.

7    I can't hear you, neither can my court reporter.

8              MR. SMITH:  I just wanted to note for the record,

9    your Honor, that counsel just entered their appearances on

10   the executive committee that your Honor appointed on the

11   case.  We asked them to come today because we are

12   anticipating some discussion about the motion to intervene

13   and the objection.  As your Honor may know, the motion to

14   intervene has been withdrawn.  We are advised by two members

15   of the executive committee who aren't here because they were

16   advised by Mr. McNamara that he was not going to appear

17   today.

18             THE COURT:  Okay.  Now, when was that withdrawn?

19   I'm sorry, just a moment.  Your appearances, and then I'll

20   come right back to you.

21             MR. SMITH:  As far as I know, your Honor, it was

22   electronically filed today.

23             THE COURT:  Okay.  Now, we are going to search for

24   that, so just a moment, because we don't have a record of

25   that yet.  So that was going to consume a large part of the
```

MDL NO. 07-1807 DOC - 10/05/2009

9

```
1    afternoon because I had some suggestions of a way -- about a
2    way of going forward and not, you know, trash-canning the
3    settlement.
4              MR. SMITH:  Well, I believe I have only been able
5    to --
6              THE COURT:  You come on up here, come on.  You
7    help my clerks find it, okay?
8              THE CLERK:  It was filed today.
9              THE COURT:  It was?
10             THE CLERK:  I don't know what time, but it was
11   filed.
12             THE COURT:  It was filed today.  When was it
13   filed?
14             MS. FINEMAN:  12:39.
15             THE COURT:  Excellent.  Thank you very much.
16             MR. SMITH:  It was after these guys got on planes.
17             THE COURT:  Well, it's kind of winding it's way.
18   I had no idea of that.
19             THE CLERK:  On here it says 11:40.
20             THE COURT:  11:40.  Thank you very much.
21             MR. SMITH:  Your Honor, I do want to point out,
22   just so the record is clear, I believe that -- as I said, I
23   can only read a small tiny version of it, but I believe it
24   says he has withdrawn the motion to intervene, but not the
25   objection, although he --
```

MDL NO. 07-1807 DOC - 10/05/2009

10

```
 1            THE COURT:  What does that mean?

 2            MR. SMITH:  I haven't the foggiest idea, your

 3   Honor, particularly since he hasn't appeared.

 4            THE COURT:  Well, let me tell you that the only --

 5            Well, I'm sorry.  On behalf of the defendants.

 6            MR. HEINICKE:  We're happy to stand aside, your

 7   Honor, but maybe for formality sake.

 8            (Laughter.)

 9            MR. HEINICKE:  Malcolm Heinicke from Munger,

10   Tolles and Olson for the Wachovia defendants.

11            MS. ALMON:  Thank you, your Honor.  Lorie Almon

12   from Seyfarth Shaw, LLP, for the Wachovia defendants as

13   well.

14            THE COURT:  Thank you very much.

15            MR. BARTLETT:  And I am Brett Bartlett with

16   Seyfarth Shaw for the Wachovia defendants.

17            THE COURT:  Well, first of all, the Court sees no

18   reason to upset this hard-sought and otherwise what appears

19   to be a fair, adequate and reasonable settlement, but I want

20   to discuss a couple matters with you.  It's been reached on

21   behalf of thousands of individuals.

22            I just wanted to clarify the release issue.  What

23   I'm worried about is issue preclusion.

24            Is it Wachovia's -- defendants' position that the

25   settlement as it now stands releases any and all of Rouse's
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

MDL NO. 07-1807-DOC - 10/05/2009

11

1   claims against the Wachovia defendants, specifically First

2   Union and Wachovia Securities, even though Rouse has not

3   signed the agreement?  And in asking that, let me tell you

4   what my concern is.

5           I recognize that the proposed judgment submitted

6   by the settling parties at paragraph 15, it indicates that

7   all MDL consolidated cases, except Rouse's original

8   complaint, are dismissed with prejudice, and that Rouse's

9   original complaint shall be transferred back to the Southern

10  District of New York.  However, I'm raising the question

11  because based on the briefing submitted by the settling

12  parties, I want to make sure that my order in this

13  settlement will not be used for preclusive purposes to argue

14  that Rouse has failed to state a claim.  In other words, I

15  have no problem cutting Rouse out and leaving Rouse to his

16  own devices in New York, but what I don't want to do is make

17  a ruling by virtue of signing this Settlement Agreement that

18  he is then a party to this and that this has a preclusive

19  effect in the action he might bring in New York.

20          MR. HEINICKE:  Your Honor, it's an excellent

21  question.  The position of Wachovia, which after great

22  discussion with, now our friends, the plaintiffs' counsel --

23          THE COURT:  Your close friends.

24          MR. HEINICKE:  Yes, close friends, some of them.

25          (Laughter.)

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

```
 1              THE COURT:  I'm just joking for the record.  We
 2   know that it's --
 3              MR. HEINICKE:  Yes, we are joking.
 4              (Laughter.)
 5              MR. HEINICKE:  Well, the objection has led to
 6   continued negotiations amongst counsel as were hard fought
 7   before this was reached, and to put it simply, your Honor,
 8   there is no reason to cut Rouse out of this settlement
 9   because he was not part of this settlement.  This settlement
10   by definition covers employees of Wachovia.  Mr. Rouse was a
11   contractor --
12              THE COURT:  No, now just a moment.  This is where
13   we are going to get tied up for hours.  You see, I
14   understand the position that he's an independent contractor,
15   but that's not the way this original settlement was drafted
16   When I got this in its initial form, and we'll go through it
17   paragraph by paragraph, he was a party to this.  I'm going
18   to repeat to you, this will not be a settlement if it has
19   preclusive effect, and I don't see any reason why Wachovia
20   isn't going to agree to that.  Rouse is certainly apparently
21   agreeing to that; he is not here.
22              MR. HEINICKE:  We agree to it.
23              THE COURT:  Okay.
24              MR. HEINICKE:  The short answer is that this
25   settlement will not have a preclusive effect on Mr. Rouse.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

MDL NO. 07-1807 DOC - 10/05/2009

13

```
1    That doesn't mean Wachovia waives all other arguments it has

2    against Mr. Rouse, but we will not argue that this

3    settlement precludes Mr. Rouse's claim going forward.

4            THE COURT:  That's all I care about.  I care about

5    that in instituting this settlement, that it's not argued

6    later in a New York court that this is preclusive because he

7    was originally, you see, joined as a party.  And I

8    understand your position, he's an independent contractor.

9            So that was going to be what I was -- I was simply

10   going to suggest that the parties simply agree that Rouse in

11   no way is subject to the terms of this settlement, and that

12   his sole case as articulated in his original complaint, MDL

13   ended this action, which was 07-00298, is remanded to the

14   Southern District of New York pursuant to 21 USC 1407, Rule

15   7.6(c)(i), or double (i)s, as provided for in paragraph 1 of

16   the operative complaint.  And I was prepared to do that even

17   over Rouse's objection today, quite frankly, if I had him

18   today.  I see no reason to torpedo a settlement that is

19   hard-fought, and the reason I was concerned is because -- so

20   you hear my full concern, and I think it's resolved.

21          Rouse had raised the following objections to the

22   settlement, which are also intertwined with his motion to

23   intervene.  He contended that the settlement fails to

24   properly allocate settlement proceeds between class members,

25   that the settlement fails to reflect that some First Union
```

MDL NO. 07-1807 DOC - 10/05/2009

14

1   and Wachovia employees were misclassified as independent

2   contractors, and that the settlement was based on incomplete

3   data, as it did not address the misclassification of

4   employees as independent contractors, and the class lead

5   counsel had failed to address problems with respect to

6   allocation.

7          I know that the settling parties had argued that

8   Gerald Rouse is not a class member as defined in the

9   settlement, so he has no standing to either object or

10  intervene.  As to the allocation objections, I didn't

11  believe, tentatively subject to hearing from Rouse, that

12  they had any merit.  He provided minimal argument or

13  authority for his position, that the allocation of

14  settlement funds provided for in the Settlement Agreement

15  does not adequately account for variations in state law.

16         In addition, the record supports that lead counsel

17  adequately accounted for variations in state law, et cetera.

18  As to Rouse's objection that the Settlement Agreement does

19  not properly address those brokers who were properly

20  categorized as independent contractors, I agree that the

21  settlement need not reach such an issue.  As the opposing

22  parties had pointed out, the consolidated class and

23  collective class action, which is the operative complaint

24  filed with this Court on November 5th, 2000, makes no

25  reference to any improper independent contractor

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

MDL NO. 07-1807 DOC - 10/05/2009

15

1    designation.

2           In addition, Rouse's original complaint that was

3    MDL'd into this action also only referred to the improper

4    classification of exempt versus non-exempt employees.  In

5    addition to the fact that the operative complaint does not

6    include allegations with respect to improper independent

7    contractor classifications, at least the record before me

8    also demonstrates that Rouse's raising of the issue here is

9    not timely as a result of his own seeming lack of diligence

10   and failure to respond to discovery requests.  Therefore, I

11   believe that the settlement's failure to address claims of

12   independent contractors does not provide the basis for

13   intervention or disapproval of the settlement, and I'll make

14   that record now, although I expected Rouse to be here, in

15   his absence, apparently.

16          However, this was my concern, and let me state it

17   again because I still have this funny record where he's

18   somewhat objecting -- not waiving his objections, so I want

19   to be very careful with this later on.  There is no reason

20   to have you to come back because I take any shortcuts.

21          The crux of Rouse's concern is that the settlement

22   both releases his claim at the same time that it excludes

23   him from its provisions, or at least that's the way I read

24   his objection.  Now, this argument does cause me some pause,

25   or did, anyway.

MDL NO. 07-1807 DOC - 10/05/2009

16

```
 1           The defendants represent that the settlement will

 2    not and does not release Rouse's claims.  This argument has

 3    been tied to your position that Rouse has no standing to

 4    neither object or intervene.  Specifically, you contend that

 5    Rouse is not a class member because he was never employed by

 6    any of the named defendants.  Instead, you've argued that

 7    the proper party for Rouse to sue based on either his

 8    independent contractor or exempt employee allegations as

 9    Wachovia Securities, Financial Network, LLC, referred to as

10    Fi-Net.  However, Fi-Net is not a named defendant in this

11    action.

12           Thus, in arguing that Rouse has sued the wrong

13    party, which is why he has no standing, you've also

14    contended that his independent contractor allegations

15    against Fi-Net are not released by the current settlement.

16    However, it is clearly Rouse's position, in looking at these

17    papers, that he has claims not just against Fi-Net but also

18    against First Union and Wachovia Securities, who were named

19    defendants in this MDL action and in his pre-MDL complaint.

20    Furthermore, the opposing parties' contention that Rouse

21    should have no concerns with respect to the settlement and

22    release of his claims has caused me concern because of the

23    fact that Rouse, first, is named as a class representative

24    in the proposed settlement.

25           You see, that's what's inconsistent.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

 1            And second, he's a named plaintiff in the

 2    operative complaint.  And the parties appear to contend that

 3    the current settlement fully settles the claims in the

 4    operative complaint.  So furthermore, the parties moving for

 5    approval of the settlement concede, in determining the

 6    adequacy of the settlement, that the goal of the settlement

 7    is to avoid determination of contested matters.  Thus, a

 8    settlement or fairness hearing is not to be turned into a

 9    trial or a rehearsal for trial on the merits.  The trial

10    court is not to reach any ultimate conclusions on the

11    contested matter, issues of fact of law which underline the

12    merits of the dispute.

13            Now, based on this precedence cited in Officers

14    for Justice v. Civil Service Commission, the Court would

15    approve the class action settlement, I cannot also seemingly

16    engage in a motion to dismiss for failure to state a claim

17    type analysis as to Rouse's MDL incorporated complaint.  So

18    in arguing that Rouse should not worry about the release of

19    his claims as to Fi-Net, it appears that you were implicitly

20    asking me -- at least up until your representation in court

21    today, you were asking me as the Court to make a merits

22    determination that Rouse failed to state a viable claim

23    against First Union and Wachovia Securities, and that his

24    claims as to those named defendants should be released.

25    However, the operative complaint indicates that the

MDL NO. 07-1807 DOC - 10/05/2009

18

1   plaintiff, Gerald Rouse, quote, "and many others were

2   employed by one or more defendants in positions in the

3   United States, which is at paragraph 8.  That's what's

4   caused me the confusion.

5           Now, if you understand all that -- I think I

6   finally do.  But I wanted to make certain that I indicated

7   to you that I have no disagreement with the settlement.  In

8   fact, I think it's an excellent settlement, and the parties

9   are to be included.  But I was going to ask Mr. Rouse the

10  following:  I didn't know why Rouse wouldn't simply agree

11  and the parties agree that this in no way subjects the terms

12  of this settlement, and that his sole case -- well, that

13  Rouse is in no way subject to the terms of this settlement,

14  and that his sole case as articulated in the original

15  complaint, which is 0700298, is remanded to the Southern

16  District of New York pursuant to the rule I've just stated

17  and is provided for paragraph 1.

18          And even if Rouse was objecting, I can tell you,

19  depending upon what Rouse said and not prejudging that, I

20  was prepared to approve the settlement, enter the proposed

21  judgment and transfer Rouse's case back to New York.  I just

22  didn't want to deprive him of rights or an argument in the

23  future that this had preclusive affect in New York.  But

24  Rouse isn't here, and I wanted to ask him -- he's not

25  indicated why he opposed transfer back to New York, as long

1    as the settlement clearly does not release his claims, and

2    the Court, here, provides him an opportunity to articulate

3    any injury he believes or contends will result.

4              So given all that, where are we?  How can we make

5    this absolutely clear?  And does Rouse even want, and I'm

6    talking to the choir, does he want me to transfer this to

7    New York?  Does he still want to be a part of this

8    settlement?

9              MR. SMITH:  Your Honor, some of those are

10   imponderables, but let me try to answer what I can.

11             THE COURT:  I'm going to take a recess in a moment

12   while I ponder it, so you help me for a moment.

13             MR. SMITH:  Let me answer what I can and suggest

14   some things that may not be complete answers.

15             Mr. Rouse's concern about a release may have

16   focused on the fact that he was originally proposed before

17   we focused on what his claim was --

18             THE COURT:  I see.

19             MR. SMITH:  -- which came about with his

20   objection.  He was originally proposed to get an

21   enhancement, and the named plaintiffs who are getting

22   enhancements are signing a general lease.

23             THE COURT:  I see.

24             MR. SMITH:  And that may be -- I can't speak for

25   him, I don't know, but that may be where his release concern

1    came from.

2           It was our intention on the plaintiffs' side of

3    the case that by severing his case, making -- now if we know

4    what "underlay," "underlied" it, whatever that word is, that

5    would be no one was behind it.  By severing his case and

6    sending it back to New York, it was clear that none of

7    whatever those claims are in that case are precluded.

8           THE COURT:  And as long as the defendants are

9    agreeing, then I think I rest easy, and I have that

10   representation.  No preclusive affect in New York.  He can

11   bring his lawsuit.

12          MS. ALMON:  Your Honor, if I can just make one

13   clarification on that so there is no confusion on the

14   record.

15          Our belief is that this settles the claims of all

16   class members who are employed by and using Wachovia's view

17   of "employed by" the Wachovia defendants in the case.  So to

18   the extent that Mr. Rouse might decide that he's going to

19   represent a group of people who were class members within

20   the definition of this case, we would say the -- the -- the

21   New York class members already had their claims settled in

22   this case.

23          THE COURT:  Let me put myself in the place of the

24   New York judge for just a moment.  That's what I'm trying to

25   see how I would appreciate this case coming to me.

MDL NO. 07-1807 DOC - 10/05/2009

21

```
 1          MS. ALMON:  So I think the independent contractor

 2   claim that he makes that I was misclassified as an

 3   independent contractor and then doubly mistreated as being

 4   treated as non-exempt, or rather, it's exempt from the

 5   overtime laws, that's the claim that we don't believe is

 6   included in this settlement, that the people who are

 7   classified by Wachovia are independent contractors, which

 8   Mr. Rouse is, and to the extent he tries to make other

 9   claims on behalf of independent contractors, we'd preserve

10   all of our defenses.  But to the extent he was trying to go

11   in and stand in the shoes of the employees of Wachovia, who

12   these counsel represent, we do believe those claims are,

13   otherwise, resolved by this moment.

14          THE COURT:  Just a moment.  How does the New York

15   court, when it receives this case, determine who are

16   independent contractors and who falls within this settlement

17   concerning this Rouse group?

18          MS. ALMON:  Well, I think there is no question

19   that all of the people included in this settlement class

20   were W-2 employees.

21          THE COURT:  Okay.

22          MS. ALMON:  So without wanting to think through

23   all of the defenses we might have in another case pending

24   before a New York judge based on an independent contractor

25   claim that we are not here defending, it would strike me
```

MDL NO. 07-1807 DOC – 10/05/2009

22

1   that here, we are dealing with people who are W-2 employees

2   where there is definition in the case that very clearly says

3   "employees" who are regarded by Wachovia as employees.

4              THE COURT:  Well, I don't think Rouse puts himself

5   in the best position by not appearing here, and instead of

6   playing the "what if" game, you're not in the position to

7   answer those, but you've heard my concerns.  I certainly

8   wasn't going to take this hard effort on both of your sides,

9   which I think is excellent, and torpedo it over Rouse's

10  concerns.  By the same token, I don't want preclusive

11  effect.  I just can't sort out what that New York judge is

12  going to deal with, and if he turns to me for guidance, I'd

13  want to have some kind of a response as to what this

14  settlement was about.

15             MS. ALMON:  It's our position that Mr. Rouse by

16  deciding he doesn't want to join this settlement has no

17  personal claims precluded, but to the extent that Mr. Rouse

18  tried to stand in the shoes and say that he was a class

19  representative of employees classified as such by Wachovia,

20  who otherwise would fit in the class definition here, their

21  claims are extinguished by this --

22             THE COURT:  Okay.  Why don't you have a seat.

23             MS. ALMON:  -- and receive notice, and that's an

24  important clarification, that the independent contractors

25  wouldn't have received notice of this settlement.

MDL NO. 07-1807 DOC - 10/05/2009

23

```
1              THE COURT:  All right.  We'll be right back with
2   you.  Let me look at this judgment in chambers for just a
3   moment.
4              (Recess.)
5              THE COURT:  All right.  Then back on the record.
6   All counsel are present.
7              Counsel have come into court and informally read a
8   sentence to the Wachovia defendants, seeing if there was an
9   agreement.  It's in paragraph 15, the last line would read,
10  "Specifically, the stipulation in no way precludes any of
11  Gerald Rouse's personal claims against the Wachovia
12  defendants."  I think that stops any issue or preclusion --
13  I'm sorry, any preclusion in this matter.  Would that be
14  acceptable to Wachovia?
15             MR. HEINICKE:  Yes.
16             THE COURT:  All right.
17             Then, counsel, with that in mind, is there
18  anything further with the parties in this matter?  I'm
19  prepared to sign this agreement.
20             MR. SMITH:  Nothing from the plaintiffs' side,
21  your Honor.
22             THE COURT:  From Wachovia?
23             MR. HEINICKE:  Okay.  So yes, your Honor, as a
24  matter of housekeeping to clarify what's listed I believe is
25  document 77 on the docket as the proposed judgment, which
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

MDL NO. 07-1807 DOC - 10/05/2009

24

 1   will be amended per your Honor's recent statement.

 2           THE COURT:  I've amended, Counsel.  The document

 3   I'm going to sign, which is why I the took the time to word

 4   process it in the back.

 5           MR. HEINICKE:  Thank you, your Honor.

 6           THE COURT:  And I've read that portion to you.  Do

 7   you want to look at it one more time?

 8           MR. HEINICKE:  No, your Honor.

 9           THE COURT:  I'd be happy to show it to you.  Why

10   not?

11           Here, take a look at it.  I just want to be

12   absolutely certain.  There is no reason for you not to look

13   at it.  There you go.  It's the last line that's been added

14   in paragraph 15.

15           MR. SMITH:  Your Honor, I would just point out for

16   the record that this proposed judgment is a judgment that

17   grants, essentially, not only the motion to prove the

18   settlement, but also the motion to prove the fees, expenses

19   and other items.  It's all in there.

20           THE COURT:  That's correct.

21           MR. SMITH:  Thank you, your Honor.

22           THE COURT:  All right.  On May 11, 2009, the Court

23   granted preliminary approval of the proposed class action in

24   this matter.  By doing so, this Court found on a preliminary

25   basis that the terms of this settlement failed within the

MDL NO. 07-1807 DOC - 10/05/2009

25

1   range of reasonableness and were adequate and fair to class

2   members.

3       For the purposes of the settlement, this Court

4   conditionally certified the following class under Federal

5   Rule of Civil Procedure 23, quote, "All individuals who are

6   employed by Wachovia Corp., Wachovia Securities, LLC, or

7   First Union Securities, Inc., as a financial advisor or

8   financial advisor trainee during all or part of the maximum

9   applicable class period for the state in which the

10  individual was employed, as set forth in the agreement."

11  Preliminary Approval Order Docket Number 55 at paragraph 4.

12      In addition, the Court conditionally certify the

13  comparable class under the Federal Fair Labor Standards Act

14  at paragraph 5, the Court also set a final approval hearing

15  for October 5th, 2009 at paragraph 4.

16      The parties filed the approved motion with the

17  Court on September 21, 2009.  The parties reiterated their

18  position taken at the preliminary approval stage that the

19  final settlement is fair, reasonable and adequate and should

20  approved by this Court.

21      Under the Federal Rule of Civil Procedure 23,

22  district courts should generally approve settlements if they

23  are fair, adequate and reasonable.  Similarly, under the

24  Fair Labor Standards Act, the district court can approve a

25  proposed settlement only after scrutinizing the settlement

MDL NO. 07-1807 DOC - 10/05/2009

26

1   for fairness.

2           To determine if a settlement is fair, some or all

3   of the following factors should be considered:  First, the

4   strength of the plaintiffs' case; second, the risk, expense,

5   complexity and duration of further litigation; third, the

6   risk of maintaining class certification; fourth, the amount

7   of settlement; fifth, the investigation in discovery; sixth,

8   the experience and views of counsel, and seventh, the

9   reaction of class members to the proposed settlement.

10          Here the facts generally demonstrate that this

11  matter meets the requirements for court approval, as

12  articulated in the plaintiffs' approval motion at pages 14

13  through 21, which the Court, here, adopts through

14  incorporation by reference.  First, the settlement resulted

15  from arms length negotiations, multiple mediation sessions

16  and the use of an experienced mediator.  Furthermore, the

17  parties exchanged a substantial amount of data in advance of

18  the mediations so that the parties could adequately evaluate

19  the strengths and weaknesses of claims and defenses.  In

20  addition, class counsel and Wachovia's counsel are both

21  experienced in wage and hour litigation.

22          There is a second major consideration both

23  plaintiffs' and defendants' cases are well-supported by

24  adequate legal authority.  While the issue has not been

25  settled, the Wachovia defendants content that plaintiffs and

 1    class members are properly classified under state and

 2    federal wage and hour overtime compensation laws.  For

 3    example, Wachovia contends that class members properly fall

 4    within a number of exemptions, such as the administrator or

 5    outside sales exemptions, which would undermine any

 6    entitlement to overtime wages.

 7            If Wachovia were to prevail on any such claims,

 8    plaintiffs' claims would be severely limited, if not

 9    altogether, wiped out.  This settlement is also appropriate

10    in light of the risks involved and the results achieved.

11    This matter has been proceeding as an MDL action since 2007

12    and includes cases filed as early as 2002.  This matter is

13    also complicated by the sale of Wachovia to Wells Fargo.

14            In addition, if this action were to proceed toward

15    trial, it would likely involve extensive discovery

16    implicating further expense, delay and risk.  Thus, the

17    Court agrees that the complexity of issues, expense and

18    duration of any further proceedings favor final approval of

19    the settlement.

20            The risk of maintaining this matter as a class or

21    collective action also supports approval of the settlement.

22    Where the settlement is to fall through, the Wachovia

23    defendants would vigorously contest class treatment here,

24    and in similar cases, have denied certification, citing Tran

25    v. JP Morgan Chase Company, denying classification of loan

```
 1    officers because exemption determinations necessarily

 2    involve a fact-by-fact inquiry into the circumstances of

 3    each employee.  The amount of settlement and benefits to the

 4    class, furthermore, support Court approval.  The settlement

 5    involves approximately 10,000 class members and a settlement

 6    fund totaling $39 million.

 7            It was represented by plaintiffs' counsel that

 8    such a settlement is in line with other wage and hour

 9    litigation class action settlements involving brokers.

10    Concerning the declaration, I believe, Mr. Smith, by you, in

11    support of the motion for final approval of class collective

12    action settlement paragraph 14.  In addition, the extent of

13    discovery completed, as well as the developed record,

14    favored final approval.

15            Here, before reaching the proposed settlement, the

16    parties exchanged voluminous amounts of information,

17    including approximately 16,000 pages of documents and work,

18    month and compensation data covering the class period.

19    Plaintiff also hired a forensic accountant to assist in

20    analyzing the work, month and compensation data.

21    Furthermore, the parties took four depositions, and

22    plaintiffs' counsel interviewed numerous class

23    representatives.  Thus, the parties were well-prepared to

24    negotiate and enter into a settlement.

25            As noted earlier, the experience of class counsel
```

MDL NO. 07-1807-DOC - 10/05/2009

29

 1    also strongly favored settlement approval.  Cotchett, Pitre,

 2    McCarthy and Wolf, Haldenstein, Adler, Freeman and Hertz are

 3    co-lead counsel in this matter.  To date, Cotchett and Wolf

 4    Haldenstein had more than adequately performed in this

 5    matter and continued to receive recognition in other courts

 6    for their excellence in wage and hour class-action

 7    litigation context.

 8              Finally, there is minimal opposition to this

 9    settlement also favoring court approval.  While the Court

10    waits to fully address the single objection to the approved

11    motion, the lack of any opposition militates against

12    approval.  Indeed, all 29 of the named plaintiffs, with the

13    exception of the lone objector, which has now been resolved,

14    signed the settlement agreement, and none of the other class

15    members filed objections.  Again, there is a single

16    objection to the final approvement, but that's been resolved

17    by the Court in paragraph 15 of the last sentence to protect

18    the issue concerning any preclusion.

19              Concerning fees -- the attorneys fees -- well, I'm

20    sorry.

21              The plaintiffs seek an award of $9,750,000, plus

22    the pro rata share of the post-judgment interest, payable

23    from the 39 million settlement fund.  This figure represents

24    25 percent of the settlement fund, and for reasons stated in

25    the plaintiffs' brief, the Court agrees that this fee is

1   reasonable and also approves it.  And the Ninth Circuit

2   district courts can utilize either the percentage of the

3   fund or the Lotus Star method to calculate attorneys' fees

4   in the class action context.  In addition, the Ninth Circuit

5   uses a 25 percent benchmark in common fund cases.

6          Considering the settlement provides an exceptional

7   recovery, given the risks and uncertainties of the action

8   against the settling defendants, the settlement was achieved

9   as a result of vigorous litigation by plaintiffs' counsel,

10   and the fee request is within a reasonable range, this

11   25 percent that the party requests, and the Court approves

12   the fee.  In addition, the fee is reasonably based on the

13   Lotus Star Crosscheck.  The ultimate Lotus Star figure in

14   this matter would likely be approximately $7.5 million.

15   Based on this figure, the requested fee demonstrates a

16   modest multiplier of 1.3 falling within range of

17   reasonableness in the class action context.  In addition,

18   with notice being sent to over 10,000 class members, the

19   minimal opposition also supports the reasonableness of the

20   fees.

21          Concerning expenses, this Court agrees that the

22   expenses incurred by class counsel and the claim

23   administrator are also reasonable and should be reversed

24   from the settlement fund.  Class counsel specifically

25   requests reimbursement for litigation cost and expenses in

1  the amount of $436,661.87, plus a pro rata share of

2  post-judgment interest.  The cost and expenses are

3  adequately documented and reasonable in light of the

4  circumstances of this case, and I believe it's $661.87.

5          Would you check that, counsel?  My notes aren't

6  complete.  I think it's $436,661.87, not 666 --

7          MR. SMITH:  It is the correct number, your Honor.

8          THE COURT:  All right.

9          MR. SMITH:  I thought that's what I heard you

10  read.

11          THE COURT:  Thank you.

12          In addition, plaintiffs' counsel seeks $295,650.09

13  for reimbursement of expenses to the claims administrator.

14  As of September 15, 2009, the claims administrator has

15  incurred costs of $170,650.90.  The claims administrator

16  estimates that it will incur an additional 10 -- or I'm

17  sorry, 100,000 to $125,000 in winding up this matter.  As

18  the settlement agreement and class notice estimate that the

19  claims administrator's cost would, therefore, total 200 --

20  or strike that -- $300,000.  The Court hereby approves up to

21  $295,650.90 in costs for claims administrator, and plus the

22  pro rata share of any post-judgment interest.

23          Finally, concerning the enhancements to class

24  representatives in the amount of $15,000 each, this is well

25  within the range of reasonableness of enhancement payments

 1   awarded named plaintiffs and other recently settled

 2   stock-broker wage and hour actions.  Thus, the Court

 3   approves the named plaintiffs enhancements in the amount of

 4   $15,000.

 5              I only had one other question, I think.

 6              As to the legacy class members that you referred

 7   to, the parties have agreed that all legacy class members

 8   who submitted claim forms, regardless of whether the

 9   individual has raised work, month challenges, will obtain

10   payment for a maximum potential short-fall caused by the

11   incompetent data.

12              I think you represented that there is 7,250 claims

13   received by the claims administrator, 1,137 included

14   challenges to the number of qualified work, months printed

15   on the claim forms.  I know that you represented that you

16   met to discuss the gaps of the work, month data that

17   extensively met to the majority of these challenges, and the

18   Wachovia defendants represent that they had incomplete work,

19   month data for those financial advisors who were absorbed by

20   Wachovia as a result of Wachovia's purchase by Prudential

21   Securities and Atlas Securities.

22              As to the remaining work, month challenges, I

23   think there is approximately 690 that you noted that do not

24   relate to the legacy issue, and the parties had represented

25   in the final approval motion that they will meet and confer

MDL NO. 07-1807 DOC - 10/05/2009

33

```
 1    with respect to those challenges.

 2              Have those remaining 690 work, month challenges

 3    been resolved?

 4              MR. SMITH:  It has been resolved, your Honor.

 5              THE COURT:  What's the mechanism for that?

 6              MR. SMITH:  The -- the -- the general

 7    understanding is that ambiguities will be resolved in favor

 8    of the claimant.

 9              THE COURT:  Okay.

10              MR. SMITH:  If the records of Wachovia prove that

11    the claimants' claim is incorrect, demonstrated, then we'll

12    go with that, unless there is -- the claimant has

13    documentation that contradicts that, in which case we sit

14    down and we talk about it.  The vast bulk of those 690, I

15    think it was the number your Honor read, the vast bulk of

16    those are people who are claiming that they work longer than

17    the class period.

18              THE COURT:  I see.

19              MR. SMITH:  In other words, people who have been

20    there for 20 or 30 years and don't follow the notice,

21    counting, but there are some that are going to be legitimate

22    errors and people who forgot, or they took a month off, or

23    that kind of thing.  And those are the nitty-gritty that

24    takes a while to work out, but we do -- we're working well

25    on that, your Honor.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

MDL NO. 07-1807 DOC – 10/05/2009

34

```
 1              THE COURT:  Okay.

 2              Then, counsel, is there anything further?

 3              MR. HEINICKE:  No, your Honor.

 4              THE COURT:  Anything further?

 5              MR. SMITH:  Nothing from the plaintiff, your

 6      Honor.

 7              THE COURT:  The Court finds that this settlement

 8      is fair, reasonable and adequate.  It's approved by the

 9      Court.  The Court wants to thank all counsel for your hard

10      work.

11              Anything further, counsel?

12              MR. SMITH:  Nothing, your Honor.

13              MR. HEINICKE:  Nothing, your Honor.

14              MR. SMITH:  Thank you.

15              MS. ALMON:  Thank you for all your help.

16              THE COURT:  It's a pleasure.

17              (Recess.)

18                              -oOo-

19

20

21

22

23

24

25
```

JANE C.S. RULE, CSR NO. 9316 – U.S. COURT REPORTER

MDL NO. 07-1807 DOC – 10/05/2009

35

1                                   -oOo-

2                              **CERTIFICATE**

3

4          I hereby certify that pursuant to Section 753,

5     Title 28, United States Code, the foregoing is a true and

6     correct transcript of the stenographically reported

7     proceedings held in the above-entitled matter and that the

8     transcript page format is in conformance with the

9     regulations of the Judicial Conference of the United States.

10

11    Date:  November 24, 2009

12

13

14                    _____

                      JANE C.S. RULE, U.S. COURT REPORTER
15                    CSR NO. 9316

16

17

18

19

20

21

22

23

24

25